In re Carl BACHE–WIIG, Debtor.

Carl Bache–Wiig, Plaintiff,

v.

Armand J. Fournier, Defendant.

Bankruptcy No. 01–11909.
Adversary No. 02–1004.

United States Bankruptcy Court,
D. Maine.

Sept. 17, 2003.

Joseph M. O'Donnell, Goodspeed & O'Donnell, Augusta, ME, for Debtor/Plaintiff.

Brian P. Winchester, Augusta, ME, for Defendant.

## MEMORANDUM OF DECISION

LOUIS H. KORNREICH, Bankruptcy Judge.

### INTRODUCTION

The Debtor, Carl J. Bache–Wiig, commenced this adversary proceeding to determine the validity, extent and priority of a mortgage on his home given by him to the Defendant, Armand J. Fournier to secure payment of a promissory note. The Debtor made only one monthly payment and, prior to bankruptcy, the Defendant obtained a judgment on the note without

pursuing foreclosure. The Debtor contends in this Chapter 13 case that the Defendant forfeited his right to assert the mortgage because of his failure to pursue foreclosure in connection with his action on the note. The Debtor also seeks a determination that the judgment lien obtained by the Defendant is avoidable under 11 U.S.C. § 522(f).[1] If the Debtor is successful, the Defendant's claim will be entirely unsecured.

For his part, the Defendant asserts that the mortgage was left undisturbed by his action on the note. I agree. The mortgage remains intact despite the judgment lien. On the date of bankruptcy the Defendant's claim was secured by both the lien and the mortgage; however, the lien is avoidable under § 522(f).

### FACTS AND PROCEDURAL HISTORY

The following facts are quoted verbatim from the stipulation of the parties:[2]

1. During 1998, Defendant Armand J. Fournier, doing business as Fournier Construction, performed repairs and construction projects for the owners of commercial and residential property in the Central Maine area.

2. Plaintiff Carl Bache–Wiig is the owner of a real estate with buildings thereon at RR7, Box 1440 (Hallowell–Litchfield Road), Farmingdale, Maine and described in the Kennebec County Registry of Deeds in Book 1094, Page 473, and Book 953, Page 327.

3. On or about April 14, 1998, Armand J. Fournier entered into a written contract with the debtor for repairs to the

---

1. Unless otherwise indicated, all citation to statutory sections are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

2. Joint Stipulation of Facts dated April 19, 2003. The Exhibits referred to in the stipulation are not attached here. They are included in the record. The matter was submitted to the Court for determination based on the parties' stipulation in lieu of trial.

debtors' home located in Farmingdale, Maine, as aforesaid. The contract price was $2,818.00. A copy of the contract is attached hereto as Plaintiff's Ex. 1/ Defendant's Ex. A.

4. Armand J. Fournier claimed that he provided labor and materials to the home pursuant to the contract. Carl Bache–Wiig claimed that no all work was performed and that the work that was performed was substandard.

5. Plaintiff did not pay for the services. The Plaintiff agreed and did execute a promissory note payable to Armand J. Fournier dated June 9, 1998 in the original principal amount of $2,818.00 payable with annual interest of twelve (12%) percent and twenty-four (24) monthly installments of $141.23 each.

6. The note is secured by a mortgage which was recorded on June 10,1998 in the Kennebec County Registry of Deeds in Book 5639, Page 92. A copy of the note is attached hereto as Plaintiff's Ex. 2 / Def. Ex. B and a copy of the mortgage is attached hereto as Plaintiff's Ex. 3 / Def. Ex. C.

7. Debtor only made one payment in the amount of $141.23 and failed to pay any other amounts that were due.

8. In October, 2000 Carl Bache–Wiig commenced an action in the Kennebec County Superior Court against Armand J. Fournier under docket number CV–99–249 in which he sought a judgment that Mr. Fournier violated the Maine Home Contract Construction Act and a declaration that the aforesaid mortgage is void and of no effect. Armand Fournier commenced an action in the Kennebec County Superior Court against Carl Bache–Wiig under docket No. CV–00–219 alleging under Count I breach of contract because Mr. Bache–Wiig failed to pay the amount due Mr. Fournier, and under Count II seeking a judgment on the promissory note signed by Mr. Bache–Wiig on June 9, 1998. In lieu of consolidation, the court dismissed docket no. CV–00–219 and permitted Armand J. Fournier, the defendant in CV–99–249, to file an answer and counterclaim which mirrored, in substance, the complaint in the dismissed case. A copy of Carl Bache–Wiig's complaint and Armand J. Fournier's answer and counterclaim are attached hereto as Plaintiff's Ex. E / Def. Ex. D.

9. Armand J. Fournier filed no pleading seeking foreclosure of the mortgage securing the promissory note.

10. On April 9, 2001 the court rendered judgment against Carl Bache–Wiig and in favor of Armand Fournier on the complaint. Judgment was rendered in favor of Armand Fournier on his counterclaim, on Count I in the amount of $4,715.51 and on Count II in the amount of $4,314.04.[3] In addition, attorney's fees were awarded in the amount of $5,538.30 by order dated June 25, 2001.[4] A copy of the judgment and attorney's fee award are attached hereto as Plaintiff's Ex. 5 / Def. Ex. E.

11. A writ of execution was obtained by Armand Fournier from the Kennebec County Superior Court and it was recorded in the Kennebec County Registry of Deeds on August 14, 2001 in Book 6587, Page 315. A letter notifying Carl Bache–Wiig of the execution lien was

---

3. The operative language of the judgement states: "It is ORDERED and ADJUDGED that judgment be entered for the Defendant on his Counterclaim. Count I—judgment be entered in the amount of $4,715.51 (sic). Count II judgment be entered in the amount of $4314.07 (sic). Judgment is to be entered in the greater amount only (sic)."

4. The amount of this award, which also includes costs, was entered without objection.

sent shortly after recording. A copy of the recorded Writ of Execution with notice letter is attached hereto as Plaintiff's Ex. 6/Def. Ex. F.

12. Carl Bach–Wiig was served with disclosure subpoena. A copy of the disclosure subpoena is attached hereto as Plaintiff's Ex. 6/Def. Ex. G.

13. The real estate upon which Fournier claims a mortgage is the homestead real estate of the debtor/plaintiff.

14. The plaintiff has attained the age of 76 years, having a date of birth of 10/27/25 and claims a hmestead [sic] exemption in the amount of $60,000.00.

15. The homestead real estate upon which defendant claims a mortgage has a fair market value of $75,800.

16. There is currently a mortgage on the plaintiff's real estate in favor of Maine State Employee's Credit Union which is dated October 23, 1990 and recorded October 31, 1990 in the Kennebec County Registry of Deeds in Book 3824, Page 87, which has a balance due of $25,304.29 as of April 19, 2002.

The Debtor filed his Chapter 13 petition and plan, and subsequently filed an amended plan. Because both plans treat the Defendant's claim as a general unsecured debt, the Defendant filed an objection to confirmation, asserting that his original and amended proofs of claim establish that his claim is secured.

The three proofs of claim filed by the Defendant in the Chapter 13 case have not been specifically included in the stipulated record of this adversary proceeding. Nonetheless, as the foci of this proceeding, they will be included in the record. *See In re Standfield,* 152 B.R. 528, 531 (Bankr. N.D.Ill.1993). The last amended proof of claim, dated February 19, 2002, is apparently the Defendant's final assertion of his claim against the Debtor.

## JURISDICTION

This is a core proceeding in which final judgment may enter pursuant to 28 U.S.C. § 157(b)(2)(K) and § 1334(b).

## DISCUSSION

The Debtor makes three primary arguments: First, election of remedies, res judicata, and the one action rule bar enforcement of the mortgage; second, the judgment lien is avoidable under § 522(f) because it impairs his homestead exemption; and, third, the amount of the claim should be limited to the amount of the promissory note.

### I. Enforcement of the Mortgage

The last amended proof of claim (the "claim") superceded Defendant's earlier proofs of claim and appears to be his final statement of the amount and nature of the claim. It was designated by the Defendant to be a secured claim in the amount of $4,597.73, plus attorneys fees of $5,538.30. There is no explanation on the face of the claim of why the amount is less than the $4,715.51 awarded by the state court and there is no reference to the lien other than the date of the judgment. The only reference to the mortgage is the mention of the date of its inception. Those dates correspond to the dates admitted by the parties in the stipulation indicating that there is a factual basis to support the secured claim. Additionally, the agreed upon value of the property is enough to sustain a fully secured claim. Therefore, absent the objections raised in this proceeding, Defendant's claim would have been allowed as a fully secured claim. *See* § 502(a) and (b)(1) and § 506(a) and (b).

Relying upon doctrines of res judicata and election of remedies and the so-called one action rule, the Debtor argues that the Defendant's failure to pursue foreclosure

prior to entry of the judgment on the note bars him from asserting the mortgage in this case. His reliance on those doctrines in this context is misplaced.

█ The general rule is that a mortgagee who has obtained a judgment on the mortgage note does not forgo his rights under the mortgage until the debt is satisfied.

> [T]he cases are uniform in holding that until the mortgage debt is actually satisfied, the recovery of a judgment on the obligation secured by a mortgage, without the foreclosure of the mortgage, although merging the debt in the judgment, has no effect upon the mortgage or its lien, does not merge it, and does not preclude its foreclosure in a subsequent suit instituted for that purpose, ... the conclusion often reached in such cases being that the debt is not destroyed by the merger and that the mortgage secures the debt in its new form as merged in the judgment.

55 Am.Jur.2d Mortgages § 524 (footnotes omitted). There are no contrary Maine authorities.

### A. *Election of Remedies*

█ In *Brickyard Assoc. v. Auburn Venture Partners*, 626 A.2d 930 (Me.1993) the mortgagor argued that the mortgagee and subsequent purchaser of the property at issue was barred from prosecuting an action against him on the mortgage note because the mortgagee had elected foreclosure as a remedy. *Id.* at 934. The Law Court held that the mortgagee possessed a valid right to seek repayment on the promissory note until the claim was satisfied. "The doctrine of election of remedies ... precludes the utilization of two inconsistent and *repugnant* positions to seek redress, *but is not implicated until a chosen remedy is pursued to a viable judgment.*" *Id.* at 935 (emphasis added). The meaning

of a viable judgment was clarified in *Saucier v. State Tax Assessor*, 2000 ME 8, ¶ 8, 745 A.2d 972, 975, when the Law Court explained that election of remedies does not apply until the debt has been satisfied. *Id.* at ¶ 9, p. 975.

█ present case is the flip side of *Brickyard* in that the initial action was on the note rather than the mortgage; nonetheless, the rule is the same: Election of remedies will not preclude action by a mortgagee until the until the debt has been satisfied.

### B. *Res Judicata*

[4, 5] █ judicata, or claim preclusion, as it is also known, "prohibits relitigation of an entire cause of action between the same parties or their privies, once a valid final judgment has been rendered in an earlier suit on the same cause of action." *Beegan v. Schmidt*, 451 A.2d 642, 644 (Me.1982)(internal quotations omitted). Like election of remedies, claim preclusion will not bar recovery on a mortgage after judgment on the underlying debt. This is because, unlike an action on note which is *in personam*, the foreclosure of a mortgage is *quasi in rem*. *See Hassan v. Brooks*, 1990 Me.Super. LEXIS 110 ("[S]ince an action on a promissory note and a foreclosure action on a securing mortgage are regarded as distinct, adjudication of the ... mortgage claim does not preclude [a] promissory note claim.") The Debtor's argument that "[a] plaintiff may not split a cause of action and prosecute each of its parts in separate lawsuits." (quoting *Camps Newfound/Owatonna v. Town of Harrison*, 705 A.2d 1109, 1113–14 (Me.1998)) is unavailing because, as noted in the *Hassan* case, actions on a note and mortgage are distinct causes of action.

### C. *One Action Rule*

[6] █ "one action rule," upon which the Debtor relies provides that "[t]here

can be but one form of action for the recovery of any debt for the enforcement of any right secured by mortgage upon real property." Restatement (Third) of Property (Mortgages) § 8.2 (comment) (1997) (quoting West's Ann. Cal.Code Civ. Pro. § 726(a)). This rule, as such, has not been adopted in Maine. However, the Debtor contends that M.R. Civ. P. 13(a) similarly forbids the splitting of a cause of action. Rule 13(a) requires that "a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ..." For the same reasons that the doctrines of election of remedies and claim preclusion do not apply, Rule 13(a) will not preclude the Defendant from asserting his mortgage claim.

The result is that no applicable Maine or federal law makes the Defendant's mortgage claim unenforceable under § 502(b)(1). Thus, on the date of bankruptcy, the Defendant's claim was secured by both the mortgage and the judgment lien.

## II. *Amount of Defendant's Claim, Lien Avoidance and the Extent of the Mortgage*

### A. *Amount of the Claim*

The state court awarded judgment to the Defendant in the amount of $4,715.51 [5] and attorneys fees of $5,538.30. That judgment was a final determination of the balance due. *See Beegan,* 451 A.2d at 644. Similarly, the fee award was entered with-

out objection so it too is final. The unchallenged writ of execution and notice of lien, including the judgment, fees, costs, and interest in the sum of $11,020.97 were entered into the record of this case by agreement of the parties. Defendant's claim of $10,136.03 is slightly less than $11,020.97 because it shows the balance on the judgment to be $4,597.73. In light of the agreed upon value of the property, the claim is fully secured with interest accruing at the statutory judgment rate. *See* 14 M.R.S.A. § 1602–A.

### B. *Lien Avoidance*

■ The parties have agreed that the question of lien avoidance is to be determined in connection with this adversary proceeding. The answer to that question may be calculated from the stipulated facts. The Defendant's lien is a judicial lien on the Debtor's residence. The sum of (i) the lien, (ii) all other liens on the property ($25,304.29, the amount of the mortgage to Maine State Employee's Credit Union) and (iii) the amount of the residence exemption ($60,000 under 14 M.R.S.A. § 4422(1)) that the Debtor could claim if there were no lien on the property exceeds the value that the Debtor's interest in the property would have in the absence of any liens.[6] *See* § 522(f)(2)(A). Thus, the judgment lien is avoidable; and, were it not for the mortgage, the Defendant's claim would be entirely unsecured.

### C. *Effect of the Mortgage*

■ As discussed above, even though the recovery of a judgment on the obligation secured by a mortgage will have the

---

**5.** This is the greater amount as between $4,715.51 on Count I and $4314.07 on Count II of the Counterclaim. *See supra* note 3.

**6.** The stipulated value of the property is $75,800.00. The mortgage given to the De-

fendant shows that it was given by the Debtor and Barbara Bache–Wiig, suggesting that the Barbara may have an interest in the property. Such an interest would not change the result under § 522(f).

effect of merging the debt in the judgment; however, the mortgage will continue to secure the debt in its new form. *See* 55 Am.Jur. 2d Mortgages § 524. Until that debt is satisfied the condition of the mortgage will continue to be unfulfilled and legal title will remain in the mortgagee.

 In this instance the mortgage debt which merged in the judgment was less than the amount of the judgment. *See supra* note 5. But there was no appeal or post-judgment request to preserve the actual amount of the damages awarded on the mortgage note and no request in this proceeding for an interpretation of what may have been an ambiguous judgment. See *U.S. v. Brand,* 163 F.3d 1268, 1276 (11th Cir.1998)(defendant barred from collaterally attacking state court support order which he did not contest in state court). Thus, the amount secured by the mortgage is the amount of the final judgment plus interest at the statutory rate and fees. Contrary to the Debtor's argument, Chapter 12 of Title 33 does not require a statement of the interest rate on the face of a mortgage. Had the judgment not been entered, interest would have accrued on the debt at the rate specified in the mortgage note. Because of the judgment, interest has accrued from the date of judgment at the judgment rate. Since the claim shows the balance due to be $4597.73 on the date of bankruptcy, plus fees, the Defendant will be limited to that demand. Thus, the mortgage shall secure $4,597.73 plus interest at the statutory judgment rate from the date of bankruptcy, and fees in the amount of $5,538.30.

### *CONCLUSION*

The judgment lien is avoidable under § 522(f)(1)(A). The Defendant has an allowed fully secured claim in the amount of $4,597.73 plus interest at the statutory judgment rate from the date of bankrupt-

cy, and fees in the amount of $5,538.30. An appropriate order will issue.